## HENRY WOODS *v.* GEORGE NIXON.

IN replevin for a horfe, the following cafe was fub- mitted to the opinion of the court, to fix alfo the damages in cafe of judgment for the plaintiff.

*David Tate*, in the Summer of 1791, bought a certain number of pack-horfes, for the ufe of the army under general *St. Clair*, from *George Nixon*, at 8*l.* 15*s.* each. *Nixon* delivered all but one now in queftion, which had ftrayed. *Tate* going on the campaign of 1791, met *Henry Woods*, to whom he owed a debt : he gave him an order to *Nixon* to receive this horfe, which he had heard had returned, that he might keep the horfe, till he was fatisfied of this debt. *Woods* demanded the horfe of *Nixon*; who refufed to deliver him on the order, and following *Tate*, and pretending as a reafon a quarrel with *Woods*, procured from *Tate* an order to deliver the horfe to his fon. *Nixon* did not inform *Tate's* fon of this order, nor offer the horfe to him, till after *Woods* had brought this fuit. Then the fon refufed to accept the horfe, becaufe *Woods* had fued.

*Young*, for the defendant, made two objections to this action.

1. No action lies in the name of *Woods* againft *Nix- on*, on this tranfaction; but only in the name of *Tate*.

2. Even *Tate* could not have brought replevin for the horfe, which was never delivered to him, and of which therefore the property was not changed. Much lefs can *Woods*, to whom no delivery can be prefumed.

*K 2*

1793.        *Rofs*, argued for the plaintiff, that this action lay in name of *Woods*.

At *December* term, 1793, the opinion of the court was delivered.

PRESIDENT. I will make three queftions—1. Whether *David Tate* could have maintained any action for this horfe ?

2. Could he have maintained replevin for him ?

3. Can *Henry Woods* maintain this action ?

1. The objection, on the firft queftion is " that there was no delivery of this horfe, and till delivery, the property is not changed."

Right and enjoyment are two different things; and the one may be perfect without the other.    The property, or right, abftracted from the poffeffion, arifes from the contract; and is vefted in the buyer, by the affent of the feller, who, from the time of the fale, is indebted to the buyer for a thing in kind.    Thefe principles apply to both parties.    For as, if a horfe be fold, and die in the ftable of the vendor, between the fale and the delivery, the vendor may have debt for the price, the horfe being the horfe of the buyer from the fale; fo, for the fame reafon, if the horfe live, and the feller refufe to deliver him, the buyer, tendering the price, may take the horfe, or have detinue for him.    In the cafe before us the price was paid.    I fhould be difpofed to confider *delivery* only as the conclufive evidence of the completion of a previous contract, which, without the fymbol of delivery, had vefted the right in the buyer.    But there are other circumftances, which render this cafe ftronger.    The contract was entire, for a *parcel* or certain number of horfes, and it cannot be fevered at the will of one of the parties.    He cannot deliver the worft horfes, and retain the beft.    Delivery of part, without any new refervation expreffed, and acceptance of the whole price, as completely executed the contract, as the circumftances could admit; and the horfe coming into, or remaining in, the poffeffion of *Nixon*, came into, and remained in, his poffeffion, as the horfe of *Tate*.    *Nixon* was a mere truftee, bailee, or finder, like any other *bona fide* poffeffor; and his being liable to refund the money can make no difference in the property of the horfe: for that arifes from his obligation to deliver the horfe fafely, and his retaining him contrary to his duty.

3 *Reeve Eng.*
*Law* 273-4
2 *Powel*
*Contr.* 64.
2 *Comm* 447
—8  *Noy's*
*Max* c. 42.
*p.* 86-8
*Comb.* 341.
*Lofft.* 121.
1 *Str.* 116-7.

A husband, seized of land in right of his wife, sold 400 trees for 20l.; and half were taken away, and half of the price paid. The wife died, the heir entered, the husband brought debt for the other half of the money, and it was held good : the contract being good, at the time, and entire, could not be severed, having taken part, he might have taken the whole, in the lifetime of the wife. I argue, as before, the principles apply to both parties; the remedy is mutual. If seller can bring debt for the price, buyer may bring detinue for the thing sold. Detinue lies for him who has property, even though he never had possession, or his property be special, as, by heir, for an heir loom, by husband, for goods of wife, by buyer, for goods sold, or by bailee, or against bailee by him for whose use goods had been delivered. It lies, after performance of the condition, to recover back goods sold and delivered on a certain condition. It was agreed between plaintiff and defendant, that plaintiff should exchange his ship *F.* for the defendant's ship *R.* and give 25 guineas to boot, and, if the *F.* should be lost in the voyage she was then upon, 30 guineas more. Plaintiff paid defendant a guinea earnest. Afterwards defendant sent an excuse for not sending the *R.* because it had been previously sold to another.— Plaintiff required a peremptory answer, because, if the *F.* was lost, it would be to defendant's hurt, and tendered the 24 guineas due of the boot, which the defendant refused. The *F.* was lost, on another voyage. Plaintiff brought trover for the *R.* and, though it was objected, as here, that the property was not transferred, it was held that trover lay, every part of the agreement having been performed by the plaintiff, and that detinue would have lien. In *assumfit* plaintiff declared, that it was agreed, on 1st *May,* 1792, that he should give defendant a colt, in exchange for defendant's mare, and pay him two guineas to boot, on 17th *December* following; that it was further agreed, that plaintiff should keep the colt till 29th *September*; that mutual promises were made; that defendant, to make the bargain more firm, paid plaintiff one half-penny earnest; and that plaintiff kept the colt till 29th *September,* was ready, and offered to pay defendant two guineas, but defendant would not

1793.

3 *Reeve Eng. Law* 374. 2 *Powel Contr.* 64. *See also* 2 *Mod* 243. 2 *Comm* 447 —8. 2 *Str.* 55.

2 *Com, Di.* 63*i. Bull Ni. Pri.* 49, 50.

*Bateman v. Ellman Cro. El.* 806. *James, versus Price, Lofft.* 219.

*Bach, versus Owen. 5 T. Rep.* 409.

K 3

**134**

1793.

receive them, and had not delivered the mare to plaintiff, though often requefted. To this declaration there was a demurrer, becaufe it did not appear, that the plaintiff was ready and offered to deliver the colt to the defendant, in exchange for the mare. But it was held, that there was no foundation for this objection: the payment of the half-penny vefted the property of the colt in the defendant, and therefore it was unneceffary for plaintiff to fhew, that he had tendered the colt to the defendant.

On thefe principles, I hold, that *David Tate* might have maintained an action for this horfe. He might have maintained *detinue, trover,* or *affumfit.*

2. Could he have maintained the action of *replevin ?*

*Co. Lit.* 145 —6 *Woods Inft.* 192, 570.

In *England, replevin* lies *chiefly,* it is faid *only,* for goods taken by way of diftrefs. It feems therefore to fuppofe a previous actual poffeffion in the plaintiff. Yet, in fome cafes, it lies, where the plaintiff has not had poffeffion in himfelf, but in one under whom he claims.

*Co Lit* 14 ., *b. Bull Ni. Pri.* 53 2 *Efp* 48 —9.

Hufband may have *replevin,* for goods taken from his wife, before marriage ; executor, for goods taken from his teftator ; lord, for goods taken from his villein, as a diftrefs : the diftreining did not alter the property, the goods remained in the cuftody of the law, and the right devolved to the plaintiffs. In a cafe in *Modern Reports,* it is ftated, without any difapprobation, that *replevin* had been brought by one of the vendees againft the other, for fheep fold by the owner to two different perfons.— Be this as it may in *England,* the practice in *Pennfylva-*

*Dall.* 156.

*nia* has been to iffue *replevins* in all cafes where a man claims property detained from him. By this practice, it becomes, in fact, an action of *detinue* or *trover,* with the fpecific remedy of chancery, unlefs the defendant claim property ; and as it gives a chance of more perfect and fummary juftice, without danger of abufe, I am inclined to fupport it in the liberal extent of our practice ; and, fupporting it, muft hold, that *David Tate* might have maintained an action of *replevin* againft *George Nixon,* for this horfe.

3. Can then *Henry Woods* maintain this action ?

Let me premife, that *George Nixon* has fold the horfe, and parted with all his right in him to *David Tate,* and received for him the agreed price ; that *David Tate*

transferred the right of the horfe to *Henry Woods*, who
thus acquired a right to demand him from *George Nixon* ;
and that *George Nixon*, in refufing to deliver this horfe
to *Henry Woods*, acts malicioufly and againft confcience.
He is not, therefore, a man to be favoured in a court of
juftice, and muft expect our leaning to be againft him.
On the principles of natural juftice, independent of any
fyftem and eftablifhed forms, there can be no doubt,
that *Henry Woods* ought to recover the horfe from *George
Nixon*.   But if there be any thing in our artificial legal
fyftem, and eftablifhed forms of proceedings, to prevent
this recovery, in the prefent action, we are bound by it :
though, if we poffibly can, we will lay hold of every
thing, to reconcile to our fyftem and proceedings, a re-
covery, which natural juftice fo plainly dictates ; fince
the only effect of a contrary decifion would be another
action, in another form, in which the horfe, or his value,
would certainly be taken from the defendant, whofe con-
duct has been very unjuftifiable.

It is no objection to *Henry Woods's* recovery, that he
has but a fpecial property ; for *detinue, trover, or reple-
vin*, will lie on a fpecial property.   If *Henry Woods* had
no right to demand the horfe, the defendant might fhel-
ter himfelf under a claim of property in himfelf or in
another.   He has none in himfelf, and *David Tate*, who
has, comes forward, and declares, that he transferred his
right to *Henry Woods*.   The fpecialty of the property,
or the conditions to which it is fubject in the hands of
*Woods*, is a queftion only between him and *Tate*, who
may do what he will with his own :  *Nixon*, who trans-
ferred the whole to *Tate*, has no right to call *Tate* to
account for the difpofal of it.  He was but a mere truftee
or ftake-holder for the true owner; and, in my mind, ftands
in the fame fituation, as if he had never owned the horfe,
but had undertaken to keep him fafely for the owner, or
had found him.   There are many inftances, in which,
thofe who had the beneficial intereft, though no parties
to the contract, from which their right muft be derived,
have been fupported in actions againft one of the par-
ties :   As on a promife to another to pay money to the
plaintiff, or for goods delivered to another for the ufe of
the plaintiff.  *Trover*, for goods fold, feems to have been

*Co Lit.145.b.*
*5 Bac.abr.260*
*—3 Bull Ni,*
*Pri. 53.*

*5 Bac. 261.*
*Bull. Ni. Pri,*
*35.*

*Cro. El. 164.*
*5 Bac.abr.261*
*Bull 35, 133*
*—4. 1 Efp.*
*105-6. 2 Efp.*
*333. Atkinfon*
*v Barnes*
*Lofft. 325.*
*Green v, Far-*
*mer.*

K 4

brought againft the feller, by an affignee of the buyer, and the plaintiff recovered. *Trover* was alfo brought for goods, which plaintiff, having fold to *A*, delivered to defendant, in the name of *A.* to dye for *A.* who, being unable to pay the price, gave up his right of them to the plaintiff, and he recovered againft the defendant. An affignee of a *chofe in action* cannot fue for it at common law, though he may in chancery. The point cited from the cafe of *Cummins* affignee of *Linn*, applicable to the prefent cafe, is not the point judicially, or at leaft principally, before the court ; and befides, it is decided on the informality of the affignment, a precife form of which had been prefcribed by a pofitive act of affembly, and could not be varied. The queftion, then, at laft, feems to refolve itfelf into this : Was the tranfaction between *Tate* and *Woods* an affignment of a *chofe in action*, which will not fupport a fuit at common law ; or was it a fale or transfer of vefted property ?

In an action of *trover* for certain loads of wood, a fpecial verdict was found ; that *P.* feifed in fee of land, on which there was a great wood, fold to *C.* and his affigns, as many of the trees as would make 600 cords of wood, to be taken at the affignment of *P.* ; *C.* affigned his intereft to plaintiff. Afterwards *P.* fold to defendant fo much of his wood as would make 4000 cords of woods, to be taken at the election of defendant. Afterwards *P.* fet out, and plaintiff felled the 600 cords of wood ; and defendant (though there was fufficient left for his 4000 cords) took and converted them. On this verdict, it was refolved, that judgment be given for the plaintiff (not only becaufe, though the affignment to plaintiff had been void, yet he having, by the felling, poffeffion of them, and fo a good title againft a ftranger, but,) becaufe *C.* having a right to take the trees, if, after requeft *P.* did not fet them out to him, had an intereft, which he might affign over, not a thing in action, or a poffibility only, and the intereft of *C.* vefted in the plaintiff his affignee, in the terms of the contract : for the grantor cannot, by his own act or default, fubvert or derogate from his own grant.

This cafe goes a great way in deciding the cafe before us. At any rate, it makes me eafy in faying, that the plain rules of juftice are, in the cafe before us, con-

---

*Margin citations:*

1793.

4 *Burr .*2214.
1 *Bla.* 651.

*Dall.* 444.

*Baffet v. Maynard.*
(*Palmer's cafe* ) 5 *Co*,
25 *Cro. El.*
219.*Yelv.*188.
5 *Bac.* 261.
3 *Wils.* 332.

1793.

fiftent with the principles of our legal fyftem. Between the principles laid down in the cafe cited, and the circumftances of the prefent cafe, I fee no difference, but that, there, the fale was to *C.* and his affigns, and here the fale is to *David Tate.* But this difference, I conceive, does not prevent the application of the principles, laid down in that cafe, to the decifion of this. For, as a grant of an eftate in fee-fimple cannot be reftrained by a condition not to alien ; fo the purchafe of a chattel 2 *Comm.* 398. implies a power to fell again. The firft feller parts with all his power over the thing fold, and cannot reftrain the buyer in the ufe or difpofal of his acquired property. If, in the cafe cited, *C.* might have taken the trees, if *P.* on requeft, refufed to fet them out, the affignee of *C.* in whom all his intereft was vefted, might have taken them. If the affignee of *C.* might have taken the trees, *Woods,* in this cafe, might have taken the horfe. If he might have taken the horfe, he might, after demand and refufal, have brought *detinue* or *trover* for him. And if he might have brought *detinue* or *trover* for him, he may bring *replevin.*

Judgment for the plaintiff for 13*l.* 10*s.*